**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

HAROLD HOBBS
ADC #77219                                                                                                    PLAINTIFF

V.                                      2:06CV00059 WRW/HDY

FOREMAN *et al.*                                                                                        DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge William R. Wilson, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **DISPOSITION**

An evidentiary hearing was held in this case before the Court on August 27, 2008. Following the presentation of testimony by the parties and witnesses, the preponderance of the evidence causes the Court to make the following recommendations of findings of fact and conclusions of law:

### I. Facts

Plaintiff, who is currently confined at the Tucker Maximum Security Unit of the Arkansas Department of Correction, filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging claims of excessive force and retaliatory discipline by the Defendants. Plaintiff's cause of action was previously dismissed for failure to exhaust administrative remedies as to his claims of retaliatory discipline by Defendant Eaton. On appeal, however, the Eighth Circuit Court of Appeals reversed

that decision, pursuant to the United States Supreme Court's recent decision in *Jones v. Bock*, 127 S. Ct. 910, 918-19, 923 (2007) rejecting the total exhaustion rule, and remanded the remainder of Plaintiff's claims for further consideration by this Court.

**I. Facts**

Plaintiff testified at the hearing that on October 19, 2005, while housed at the East Arkansas Regional Unit in administrative segregation, Defendants Sgt. Harrison Foreman and Cpl. Brenda Parker came to Plaintiff's cell to remove him to punitive isolation. Plaintiff complied with the first direction, to come to the cell door to have his hands placed in wrist cuffs. As an administrative segregation inmate, Plaintiff was next required to kneel on his bed to submit to ankle restraints. According to Plaintiff's testimony, while he was subdued in handcuffs and kneeling on his cot, the Defendants, totally without provocation, began beating him about the head with the shackles, then dragged him into the dayroom, kicking and stomping him all the way. Plaintiff denied resisting the officers or fighting with them in any way, and testified that he sustained injuries that required a butterfly stitch at the infirmary. He acknowledged that he was originally in prison on a life sentence for capital murder, but denied that he subsequently "murdered" an inmate he was convicted of killing in prison.[1]

Plaintiff called one witness, fellow inmate Allen Lynn Penn, who was housed in the same

---

[1] According to the institutional files introduced by the defense at Exhibit 5, Plaintiff was convicted of capital murder in 1980 and originally given the death penalty. This was reversed on appeal and he was re-sentenced to life without parole in 1981. In 1989 Plaintiff pleaded guilty to First Degree Murder for the stabbing death of fellow inmate Claiborne Bates, Jr., and received a sentence of forty years, to be served concurrently with his original sentence. Warden Greg Harmon, through whom Plaintiff's prison records were introduced, testified that Plaintiff had received "numerous" disciplinary violations, for insolence, assault and battery, failure to obey an officer, and other charges, in addition to the murder.

cell block at the time of these events. Penn testified that when he heard a "commotion," he went to his door and saw Defendant Foreman and two other officers "drag Plaintiff from his cell." He confirmed that Plaintiff was handcuffed, but he couldn't see whether in front or behind. Penn stated that Defendant Foreman "was a little too aggressive, maybe like he was taking it too personally," and the other officers involved may have been trying to "calm him [Foreman] down," but he did not see any of the Defendants hit, strike, kick or choke Plaintiff. He only saw Defendant Foreman "pulling" Plaintiff, and Defendant Parker "trying to calm things down."

Defendant Foreman was the first witness for the defense. At five feet, four inches tall and 150 pounds, his responsibility as a sergeant on duty that day was to carry out the specialized procedures necessary to move an administrative segregation inmate to another area of the unit. Despite Plaintiff's violent history, Defendant Foreman had no previous disciplinary or grievance issues with him and did not expect any difficulties on this day, so no video camera was brought in to record the move. Plaintiff complied with Defendant Foreman's order to come to the door to be cuffed, but instead of then kneeling against his cot, per the next step of the procedure, Plaintiff refused and instead sat down on his bed. Defendant Foreman, who had entered the cell to apply the leg shackles, left the cell to call for back-up, but Plaintiff "rushed him," following him to the cell door and biting him on the shoulder. Defendant Foreman reached for his mace and sprayed Plaintiff with pepper spray, continuing to try to push Plaintiff back into the cell far enough to shut the cell door on him. Unable to stop him, however, Defendant Foreman then tackled Plaintiff to the dayroom floor, outside the cell.

Defendant Foreman struggled with Plaintiff on the floor for at least a minute before other officers arrived; by that time, Plaintiff, who is six inches taller and at least fifty pounder heavier, had

Defendant Foreman pinned on the floor.  Finally Defendant Eaton and the others arrived to extricate him and subdue Plaintiff.  Defendant Foreman denied seeing any of the officers kick or stomp Plaintiff, or hit him with leg restraint chains, but agreed that a "decent amount" of force was necessary to bring Plaintiff under control.

Defendant Foreman went out to the hallway to examine his injury, a bite that punctured his clothing and skin.  He was treated first at the local hospital and immediately began a course of drugs for the prevention of HIV/AIDS until Plaintiff's health status could be determined.  Defendant Foreman did eventually learn that,  while Plaintiff was not HIV positive, he did have Hepatitis C.  This necessitated another round of treatment and continued testing in hopes of avoiding contracting that disease as a result of the bite.  Defendant Foreman testified that he still has permanent scarring on his shoulder as a result.  *See* Defendants' Exhibits ## 16-17.

As for Plaintiff's second claim, that the Defendants had schemed to deny him "yard call," or access to out-of-cell recreation opportunities, Defendant Foreman flatly denied that any such plan to retaliate against Plaintiff existed.  In fact, he testified, Plaintiff, like many of the administrative segregation inmates, frequently refused yard call because of the mandatory searches that accompanied the privilege.  In order to leave their cells, inmates are required to wear prison-issued jump suits  (not their own sweat suits, as Plaintiff demanded to do), submit to a strip-search, and acquiesce to a full search of their cell in their absence.  "Oftentimes," Defendant Foreman testified, when he was responsible for yard call, Plaintiff and many other inmates would decline the  offer to go stand around alone in the small, enclosed concrete-paved space, because they did not want their cells searched or found it "just wasn't worth it."

Defendant Brenda Parker, the 5'2" tall corporal who had accompanied Defendant Foreman

to Plaintiff's cell, testified that Plaintiff "charged" at Defendant Foreman and bit him, and that Defendant Foreman had to grab Plaintiff to keep him from running out of the open cell door. Defendant Parker called for help and tried to get between the two men, but Plaintiff was too big for her actions to have much effect and he was able to force his way out of the cell to the barracks' dayroom floor. Defendant Parker described Plaintiff as basically unaffected by the pepper spray, continuing to kick and fight even as Defendant Eaton helped her get the leg restraints on Plaintiff's ankles. She denied that any of the Defendants had kicked or hit Plaintiff during the occurrence, or having been part of any scheme to retaliate against Plaintiff or deny him yard call, although she had seen Plaintiff refuse yard call when he did not want to submit to a search.

Defendant Lamontrell Jones, who was a correctional officer at the time but is no longer employed at the Arkansas Department of Correction, testified that during the portion of the struggle that he observed, he saw no hitting, kicking or stomping. He added that he did recall Plaintiff refusing yard call, but that he had no previous problems with Plaintiff; he "always got what he wanted," probably because he "claimed to be related to [deputy director] Ray Hobbs."

Defendant Kathy Steward, the Max Barracks Supervisor, testified that although she came upon the scene only at its conclusion, when the officers were finally getting the leg restraints on Plaintiff, he was still struggling and resisting. Nonetheless, she stated, she saw no use of excessive force under the circumstances – none of the hitting, stomping or kicking that Plaintiff has alleged. Defendant Steward also testified that when she had escorted inmates to yard call, it was customary for inmates to refuse the offer; she did not recall ever disciplining Plaintiff or denying him yard call as punishment or for any other reason.

Defendant Edward Eaton, the correctional officer who wrote Plaintiff the disciplinary[2] that resulted in the punitive move to isolation, testified that he responded to the radio call for assistance to find Plaintiff on top of Defendant Foreman. Defendant Eaton tried to put the leg restraints on Plaintiff, but even after Defendant Foreman sprayed him, Plaintiff continued to resist – and even after the officers had Plaintiff's legs shackled he continued to fight them. Defendant Eaton added that he had never previously written Plaintiff a disciplinary, or been the subject of one of his grievances, but he had refused to allow Plaintiff out of his cell for yard call when Plaintiff refused to change into the proper prison-issue garb or submit to a search.

Defendant Cheryl Evans, the lieutenant who accompanied Plaintiff to the infirmary, testified that even after Plaintiff had been shackled he continued to fight. At one point he had refused to walk, but was too large for the officers to carry. Afterwards Plaintiff was given a shower and placed on "behavior control" status.

Defendant Albert Norton, another correctional officer who responded to the call for back-up, testified that he arrived to find Plaintiff atop Defendant Foreman, who was on the floor on his back. Defendant Norton helped subdue Plaintiff and get the leg irons on, then assisted in getting Plaintiff to the infirmary. Although he described Plaintiff as combative, fighting and resisting even after he

---

[2] Plaintiff testified that he had refused to sign for his Kosher meal tray that Defendant Eaton brought to him on October 14, 2005, because his tray had not been kept properly separate from the non-Kosher trays. Plaintiff, who lists his religion as Muslim and reports that he has been getting Kosher meals since 2005, testified that "it wasn't because of my religion, but because the food was better." Nonetheless, upset that his tray was not kept separate, Plaintiff began to curse at Defendant Eaton.
     Defendant Eaton testified that when Plaintiff started calling him names like "punk-ass nigger," he wrote Plaintiff a disciplinary. The following day, Plaintiff lashed out at Defendant Eaton again, and when Eaton returned to pick up Plaintiff's tray, Plaintiff was throwing feces out of his cell at the officers. It was these actions that led to Plaintiff's removal to isolation.

was cuffed and shackled, Norton testified that he observed no excessive use of force against him, and no hitting, kicking or stomping, just the "least amount of force necessary." Defendant Norton also confirmed that when Plaintiff insisted on wearing his own sweat suit, not the required state-issued two-piece or jumpsuit, he was not allowed to go out on yard call, but typically, Plaintiff would just decline the offer.

## II. Analysis

Here, after listening to all the testimony and drawing appropriate inferences based on the credibility of the parties and their witnesses, the Court is persuaded that Plaintiff has not shown that the force used against him was excessive. Plaintiff's own witness could not corroborate his version of the events, which was inconsistent with the testimony of each and every other witness as well as his own disciplinary history.

"Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in good faith to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields,* 207 F.3d 491, 495 (8th Cir. 2000)(citations omitted). Relevant factors include the need for force, the relationship between the need and the amount of force used, and the extent of injury inflicted. *Id*. Based on the testimony adduced at the hearing, the Defendants exercised a reasonable amount of force to maintain or restore discipline. The strongest evidence in support of this finding is the extent of injury inflicted: although Plaintiff claims to have been beaten, stomped and kicked by six officers armed with restraint chains, by his own testimony he required only a single butterfly stitch to seal his wounds. And, although Plaintiff denies having bitten Defendant Foreman, the physical evidence contemporaneously preserved with the events shows that the officer was injured by what certainly

appears to be a bite.

As for the pepper spray that was used against Plaintiff, the Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment. This protection is grounded upon their right to be free from unnecessary and wanton infliction of pain at the hands of correctional officers. *Parkus v. Delo*, 135 F.3d 1232, 1234 (8th Cir.1998)(*citing Hudson v. McMillian*, 503 U.S. 1 (1992)).

> Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however. Only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.
>
> * * *
>
> Not every malevolent touch by a prison guard gives rise to a federal cause of action. "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Serious or permanent injury is not required to make out an Eighth Amendment claim. Some actual injury must be shown, however, and we consider the extent of the pain inflicted in order to determine whether a constitutional deprivation has occurred.

*Jones v. Shields*, 207 F.3d 491, 494 -495 (8th Cir. 2000)(internal citations omitted).

The Eighth Circuit in *Jones* has held that "a limited application of capstun to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." *Id*. at 496. Plaintiff has not shown any evidence that he suffered any lasting ill effects, either from the pepper spray or the cut on his head. Under these circumstances, the Court concludes that the events described amount to a *de minimis* use of force only, not excessive force giving rise to a constitutional claim under § 1983.

The Court also finds no credible evidence to support Plaintiff's claim that the Defendants conspired in retaliation to deny him yard call. Plaintiff's grievances on this matter pre-date the October 19th event by several months, refuting any claim of retaliation. Having heard the testimony

of the parties, the Court is similarly persuaded that Plaintiff has not proven that the Defendants deliberately or maliciously denied him out-of-cell recreation.

### IV. Conclusion

Accordingly,

IT IS THEREFORE RECOMMENDED that:

1. Plaintiff's claims under 42 U.S.C. § 1983 against Defendants be DISMISSED WITH PREJUDICE;

2. Any remaining pending motions be DENIED AS MOOT.

3. The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action be considered frivolous and not in good faith.

DATED this   19   day of September, 2008.

_____
UNITED STATES MAGISTRATE JUDGE